K25JWOOH                          Bail Hearing

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          18 Cr. 423 GBD

FATIMA WOODS, a/k/a Fatima Frazier,
a/k/a Shaniqua Frazier,
a/k/a Shaniqua Tarrine,
a/k/a Fatima Clark,
a/k/a Melissa Clark,
a/k/a Alisha Williams,


                    Defendant.


------------------------------x

                                      February 5, 2020
                                      New York, New York

Before:

                 HON. GEORGE B. DANIELS,

                                      District Judge

                         APPEARANCES

GEOFFREY S. BERMAN,
     United States Attorney for the
     Southern District of New York
RYAN B. FINKEL,
     Assistant United States Attorney

MOSES & SINGER, LLP,
     Attorneys for defendant Woods
BY:  BARRY S. ZONE, Esq.
               Of counsel

Also Present:
     BERNISA MEJIA, Pretrial Services Officer SDNY

K25JWOOH                          Bail Hearing

1              (In Open Court)

2              (Case Called)

3              THE COURT:  Mr. Finkel, let me start with you and

4    Probation.  What is the status of this case and what is the

5    status of the bail?

6              MR. FINKEL:  Your Honor, with respect to the

7    violation, it is my understanding that now there have been

8    several violations of Ms. Woods' court imposed curfew.

9              Pretrial Services has explained the curfew as simply

10   unworkable.  Pretrial Services relayed to the government this

11   morning that Ms. Woods is under the belief that as long as she

12   is working, she is free to essentially violate the curfew and

13   stay out past the 11:00 pm court imposed time.

14             To take a step back for a moment, that curfew was

15   imposed by the court in response to Ms. Woods' arrest for being

16   in possession of what appeared to be fraudulent credit card

17   making-materials.  That case was, as I understand it, dismissed

18   against Ms. Woods, but the circumstances were such and their

19   violations such the government and the court agreed that her

20   conditions should be imposed.

21             Since then, there have been a number of violations.

22   Ms. Woods has explained to Pretrial Services that the reason

23   for her curfew violations is because she is working in some

24   capacity.  The government is skeptical about those frankly

25   excuses, your Honor.  It has done its own research about some

K25JWOOH                        Bail Hearing

1    of the events that Ms. Woods claimed to be working at, and it

2    appears, from the government's point of view, that some of

3    those were just Ms. Woods out being social, in violation of the

4    curfew.

5            So I think government's view at this point, your

6    Honor, is we agree with Pretrial Services the curfew isn't

7    working.  I don't think that because Ms. Woods has decided to

8    violate the curfew on numerous occasions, the court should make

9    a choice to get rid of the curfew because it isn't workable.  I

10   think the solution is Ms. Woods needs to follow by the court's

11   instructions.  Ms. Woods has seemed unable to do that.

12           So the government's view is that essentially Ms. Woods

13   be given one last chance on the curfew here.  She needs to

14   understand the court's rules and impositions of conditions of

15   her pretrial release should be followed, and if they're not,

16   the government is going to seek detention, assuming there is

17   any further violations.  That is the government's view on the

18   bond.

19           With respect to the case overall, your Honor, this

20   case has been pending for quite some time, nearly a year and a

21   half, your Honor.  Ms. Woods was first arrested in May of 2018.

22   The indictment came down on June 14th, 2019.  All of the

23   discovery has been produced in this case, all discovery the

24   government is aware of it is required to disclose.

25           The motion deadline has passed.  That was on January

31, 2020.  The government at this point seeks to set a trial
date in this matter and asks for the month of June.  I
understand from conversatins with defense counsel, defense
counsel has had difficulty accessing certain aspects of the
discovery, particularly cell phone extraction.

          That cell phone extraction was first provided to
defense in December 2019.  It was re-provided again at defense
counsel's request.  I am not sure what the technical issues
are, but the parties can work that out.  At this point, the
government feels quite strongly this case should be set for
trial.  The parties are discussing possible disposition.  I am
not sure there will be a pretrial disposition.  I don't know,
your Honor.

          THE COURT:  I would like a trial date earlier than
June.  Mr. Zone, I am out of patience.  One, it is time to go
to trial or dispose of this case.  Two, the other alternative
is to remand her until this case is resolved.  I am not going
to keep going through this every time she comes in.  I don't
want any more excuses how or why she couldn't abide by the
curfew.

          MR. ZONE:  May I respond?

          THE COURT:  Yes.

          MR. ZONE:  I tell you this, your Honor, as an officer
of this Court.  I have spoken with Ms. Greenwood multiple times
over the past several weeks.  I also explained to her -- and my

1    personal business is not, of course, something I want to

2    discuss in the court.  I have medical issues.  I was in surgery

3    in December and January.  I was recovering.

4           Mr. Finkel, as he said, the discovery that is germane

5    to this case were cell phone extractions.  That is the most

6    important discovery.  That has been provided twice.  For the

7    past five days, the IT person who works for my firm and the IT

8    person who is assigned to this case from the U.S. Attorney's

9    Office, they have not been able to walk us through opening

10   anything.  I understand it is not a tremendous amount of

11   material.

12          I have not seen any discovery in this case.  I am not

13   blaming Mr. Finkel.  I am not blaming Ms. Greenwood.  I have

14   this problem with several cases because they send this dump

15   that comes in a drive, and it doesn't come with the relevant

16   software to open everything.  So you are downloading things

17   from the internet, and I am sure the court is familiar with

18   what that takes.

19          So you are downloading different programs from the

20   internet so you can open different things from the dump that

21   has been sent.  I have seen nothing in this case, your Honor.

22   As far as I am concerned, as the court is aware, most of these

23   cases are resolved.  We're happy to resolve this case, okay?  I

24   have no problem sitting down with my client, who has been in my

25   office for the past three days with my IT person, going through

K25JWOOH                    Bail Hearing

1   trying to open up files and everything file is empty.

2            We have contacted -- like I said, I don't want to

3   repeat myself, your Honor.  There is no delay on our part.  We

4   are trying to resolve the case.  In terms of her bail

5   violations, she has a GPS bracelet.  She lives in New Jersey.

6   At any moment in time Pretrial knows exactly where she is.  I

7   have read all these memos several times.  The most glaring

8   thing is that there has never been anything in this memo that

9   shows that she has not been where she said she's been, and

10  those are jobs that she is working on.  She is a single mother.

11           Her daughter was in a major car accident a week ago.

12  The carbon monoxide censor in her home failed, and she and her

13  daughter went to the hospital because when they came, and even

14  Pretrial from New Jersey came and said and saw it had failed,

15  and they both almost died from carbon, deadly carbon monoxide.

16           To go back, Mr. Finkel wasn't here at the last time

17  when we dealt with that arrest issue which was dismissed and

18  sealed, okay?  We showed the court, and I have with me emails

19  from every single violation, and I say "violation" because the

20  last time we were in court, the Court told the defendant if she

21  is going to be late, she has got to notify them and it can't be

22  every night.  It can't be every day she is late, and you

23  imposed and you kept in place the 11:00 o'clock curfew.

24           New Jersey has told her time after time you have to

25  ask your lawyer to go to court and remove the curfew.  You have

1    a GPS bracelet.  If you are lying to us, we'll know it and

2    we'll send something to the court and show them that you're

3    lying, and that in this situation, in a situation where I would

4    not be surprised if the government and Pretrial would seek

5    revocation of her bail.

6           She has never not been where she said she has been.

7    She is not out partying.  She is a single mother.  She is doing

8    everything she can to earn a living and take care of a child.

9    I am doing everything I can, as a lawyer who has been

10   practicing for 30 years and ex-prosecutor, to try to understand

11   the details of this case, which are not very complicated.  I

12   just can't look at the discovery.

13          So all I am asking the court -- and I get it, you want

14   to set a trial date, whatever is your pleasure, your Honor.  I

15   am not looking to delay this case.  I am explaining to you and

16   also in conjunction with my health issues which, like I said, I

17   don't want to bring to the Court's attention, but unfortunately

18   it has delayed me for a couple of months and it has been

19   difficult for me.  When I am in a position where I can come

20   back and start to finish the discovery review so I can file

21   motions, we can't get the discovery open.

22          We are truly, as Mr. Finkel said, engaged in trying to

23   get this thing resolved.  What I would ask the court, if you

24   want to set a trial date, again I get it, it is an older case.

25   I am giving you God's honest truthful information about what is

K25JWOOH                          Bail Hearing

1   going on in this case.  I am in touch with my client regularly,

2   and I tell her, you have a curfew, you can tell them whatever

3   you want to do.  At some point the judge is going to lose

4   patience.  He doesn't want to hear about why you're late and

5   he's going to impose a stricter curfew.

6           Judge, this isn't the case of the century.

7   Unfortunately, there have been a series of events including a

8   change from one judge to another judge, Ms. Greenwood was out

9   on maternity leave for months.  Mr. Finkel picked up the slack.

10  Then she came back into the case.  Now I am speaking with Ms.

11  Greenwood and trying to get the case resolved.  There is no

12  lolly-gaging going on here.  Ms. Woods is trying to do the best

13  she can to be a single mother, do what she has to do, earn a

14  living and let's get this case resolved.  That is what is going

15  on in this case

16          I have spent a lot of time trying to understand

17  everything, as I've just explained to the court.  I think it

18  would make sense to give her a little bit more leeway because

19  she does work and she is a single mother and she has to balance

20  and juggle all of this.  She does live quite a ways away from

21  the court in New Jersey, but she does what she has to do.  She

22  is not doing anything wrong.

23          Like I said, that GPS bracelet tells the government

24  and Pretrial where she is every minute of every day.  If she is

25  lying about where she is, and she puts down addresses on her

K25JWOOH                          Bail Hearing

1    emails, if she is lying about where she is, you bet you would

2    have heard that from the government and Pretrial.

3              MR. FINKEL:  Your Honor, if I may.

4              I believe you have a memo or should have a memo from

5    Pretrial Services, dated November 27th, 2019.  Page 2 of that

6    memo describes on October 12, 2019 Ms. Woods informed Pretrial

7    Services Department that she was going to be working and

8    requested an extended curfew for employment purposes till 2:00

9    am and she would be working in Long Island City.

10             The curfew was extended for that purpose to 2:00 am.

11   The defendant arrived home at 3:35 am, in violation of the

12   extended curfew that Pretrial Services provided.  A review of

13   her GPS positions on that date indicates the defendant was

14   never in Long Island City.  So there is at least one example

15   when granted from several months ago when she reported to

16   Pretrial Services she would be doing one thing, and the data

17   that Mr. Zone just relied on extensively showed something else.

18             I would also like to point out something else for your

19   Honor.  On January 25th, Pretrial Services notified the court

20   that she, Ms. Woods, had a violation of her curfew on that

21   date.  Defense counsel since produced a contract from that date

22   indicating that Ms. Woods was working some sort of event

23   related to a gender reveal party.  The government has done some

24   investigation.  The DEA in particular has done some

25   investigation on that contract, and the government has some

1    real skepticism about the validity of that contract.

2              The contract was apparently between Ms. Woods company

3    and a company called Builders Rhino or Rhino Builders.  The DEA

4    cannot find a company of that name anywhere in the New York

5    City area.  The close it got was a company called Rhino

6    Construction located in Long Island.  The DEA showed the

7    contract to Rhino Construction.  They had never seen it.  The

8    contract that was provided has misspellings in it.  "Yeshiva"

9    was misspelled, "holdings" was misspelled.  They could not

10   verify the construction license number that was provided, and

11   then frankly comparing the social media posting on Ms. Woods'

12   Instagram page to what this was supposed to be, that is, gender

13   reveal party, it didn't really fit.

14             Later an individual who Ms. Woods apparently is

15   friends with, based on postings on her social media page,

16   posted a gender reveal party several months later, indicating

17   that event was not as described, a gender reveal party.  This

18   is all to say, your Honor, given the long laundry list of

19   curfew violations here, what I just pointed out happened in

20   October, I appreciate Mr. Zone's argument on behalf of his

21   client, but not sure it is entirely correct.

22             The government is not seeking remand at this point,

23   but I think it is certainly warranted, given all these facts,

24   and I want to make sure the court has them all before the

25   court.

1          With respect to the trial schedule, this case was

2     reassigned to your Honor in September of 2018.  As mentioned,

3     the cell phone evidence has been provided multiple times.  The

4     government is happy to continue to discuss with Mr. Zone's firm

5     how to best provide the cell phone evidence, even if it is by

6     hard copy, if necessary.  The government, of course, will do

7     what it needs to do in setting a trial date a few months out,

8     will give Mr. Zone plenty of time to discuss that evidence with

9     his client and determine what is in the best interests of his

10    client.

11         I also want to point out this cell phone is Ms. Woods'

12    cell phone.  So Ms. Woods presumably knows what is in the cell

13    phone and can have a conversation with Mr. Zone about what the

14    government likely found inside of it.

15         THE COURT:  What is the curfew time, 11:00 now?

16         MR. FINKEL:  That's right, your Honor.

17         THE COURT:  When does her job end?

18         MR. FINKEL:  This is, I think, where the rubber meets

19    the road on this issue, your Honor.  Ms. Woods, from defense's

20    representations and her representations to Pretrial, her job is

21    somewhat uncertain.  It is not a 9:00 to 5:00.  She is a

22    freelancer, I believe, in the fashion industry or interior

23    design industry.  She goes to, she claims, a lot of different

24    events in the city, and those events change in time.  The

25    government's view is not necessarily all those events are

K25JWOOH                          Bail Hearing

1    strictly related to her profession.

2           But regardless of whether or not the Court imposed

3    conditions are the court's imposed conditions, and if Ms. Woods

4    is unable to meet those conditions, there is no excuse for

5    that.  The court has given Ms. Woods a significant amount of

6    flexibility, allowing Pretrial on its own to allow to extend

7    the curfew for work-related conditions.

8           There is no reason to stop that just because she can't

9    abide bid the by conditions this Court imposed.  In response to

10   violations, the Court's changing certainly was warranted.  I

11   don't think they should be loosened because Ms. Woods has been

12   unable to abide by them.  If anything, they should be

13   tightened.

14           MR. ZONE:  Your Honor, she is working.

15           THE COURT:  Till when?

16           MR. ZONE:  Her job work, the hours that she works

17   range, and we discussed it the last time in court.

18           THE COURT:  We discussed it numerous times, and I am

19   not satisfied by that.  The bottom line is, look, I am going to

20   do this.  I am going to extend her curfew to 12:00 o'clock, and

21   because if she is not home at 12:00 o'clock on any day, I want

22   a warrant.  That is it, period.

23           She can't take a job that keeps her out after 12:00,

24   and she has to make other emergency arrangements if she has a

25   problem because if I am told that she is not home by midnight,

1    she can pack her bags and know that I am going to put her in

2    jail, no further discussion.

3          I don't care where she is after curfew.  She is

4    supposed to be home before curfew.  If she is not there, I am

5    not going to hear any further excuse.  I want her in the house

6    at 12:00 o'clock.  If she has got a job, she is going to have

7    to leave that job or not take that job if that job is going to

8    require her to work beyond the 12:00, that she will get home at

9    12:00 o'clock.

10          No more excuses.  I have heard every single excuse.  I

11   have been more than charitable with regard to this issue.  I

12   don't have any more time to waste on her.  Her excuses are not

13   valid excuses.  To say she has a good reason to be out beyond

14   curfew just tells me that she is not abiding by the curfew.

15          No, she can't be out beyond 12:00 o'clock for any

16   reason, period.  If she is out beyond 12:00 o'clock, I don't

17   want to hear any more about what the good reasons are.  She is

18   going to jail and she is going to stay in jail until this case

19   is disposed of, and if she is convicted on this case, I am

20   going to consider all of what we have had to go through up

21   until this point about her compliance with curfew when I impose

22   a sentence.  It is over.  No more discussion.  That is her last

23   opportunity to do what I told her to do.

24          And then no more excuses.  I am tired of the excuses.

25   She is going to jail if she is not home by 12:00 o'clock on any

K25JWOOH                          Bail Hearing

1   date while this case is pending.  I don't want to hear the

2   excuse.  I don't want to know why she wasn't home.  If there is

3   an emergency, she should start making arrangements that

4   somebody else is going to handle the emergency because she is

5   not going to be allowed to do it.

6          If she has a job, and that job is running after 12:00

7   o'clock, she is going to have to excuse herself and say either

8   you are not going to pay me or you are going to have to pick up

9   the time or the money or I am going to have to leave because

10  the judge said I cannot be out beyond 12:00 o'clock for any

11  reason, all right?

12         I am taking away Probation's authority to extend

13  curfew.  Curfew is 12:00 o'clock, period.  If she is not home

14  by 12:00 o'clock, she will be in jail.  Is that clear?

15         MR. ZONE:  It is, Judge.  May I ask you, she would

16  like to address the court.  Would you just listen to her for a

17  moment?

18         THE COURT:  I will listen to her, but I guarantee you

19  it is not going to make me happier what she is getting ready to

20  say.  I don't want to hear any excuses and, no, I am not going

21  to grant her any more charitable positions with regard to that.

22         I just extended her curfew an hour, all right?  If she

23  can't meet the curfew, let her tell me that now and I will put

24  her in jail.  That is all.  That is the alternative.  The

25  alternative is not less curfew.  The alternative is jail.

K25JWOOH                    Bail Hearing

1           MR. ZONE:  I hear you.

2           THE COURT:  She is facing a serious criminal trial.

3           It is time for her to face up to that, deal with that

4   and focus on that rather than run around the streets at

5   midnight.  I don't care what she is doing.  If she wants to say

6   something, she can say whatever she wants to say, but I don't

7   want to hear it.  It is up to you.

8           THE DEFENDANT:  Your Honor, with respect to all that

9   you said, I understand and I will completely abide by,

10  completely abide by the curfew.  I am just addressing the

11  prior, the last time we were in court for the same issue.

12          It was discussed between yourself and our attorney, my

13  attorney and the government that I was to -- at any time that I

14  was late or at any time I had any prior agreements or

15  arrangements with any of my employers or any jobs I was

16  working, to notify Pretrial Services in advance, which I've

17  done.

18          Any time you have said to me, any time I am late or I

19  feel I was running behind, any emergencies, to contact Pretrial

20  Services, which I have done by phone and which I have done by

21  email.  The memoranda just states I have sent emails.  I have

22  been in constant communication with my Pretrial Services

23  officer.  They have come to my house.  They have come to my

24  work site to do visits.  If I am not home, they will come to

25  wherever I am working any time to visit me.

K25JWOOH                          Bail Hearing

1          Any time I provided emails to Pretrial Services on why

2     I am late, I also attached videos and I attached photos of the

3     progress in my work, what is going on and things of this sort.

4     I am in constant communication with my Pretrial officer.  Any

5     time I am not in, and it wasn't prior scheduled, they do call

6     my phone.  We are in constant communication.  This is what is

7     going on, listen, and so on and so forth.  It is already

8     instructed that I go directly home.

9          I just wanted to address that to the Court, I am not

10    disregarding any curfew issues.  The last time we were here, it

11    was pretty much the same thing that was brought up now.  You

12    have said that.  If I had any schedule or any arrangements or

13    any contracts with anyone, to prearrange those contracts with

14    Pretrial Services, which was being done previously because a

15    memorandum was put in, Pretrial imposed 11:00 o'clock, a strict

16    11:00 o'clock, whereas if I was late, I was to call.  There was

17    no way I can put in an extension on curfew.

18          These dates that are listed here was after I was no

19    longer able to call ahead and inform Pretrial Services of prior

20    arrangement or prior scheduled work schedules.

21          Also because one of the contracts I was working, they

22    weren't able to fully pay me, she offered me a partnership in

23    the daycare, which does run 24 hours.  I am required at times,

24    when Pretrial has visited me at this child care center now, I

25    am required at times to, in the event of an emergency, to

K25JWOOH                        Bail Hearing

1   whereas one time the alarm system, they were having issues and

2   I was to be present.

3          Other than that, your Honor, I am not just being

4   disobedient in regards to my curfew.  These are all situations

5   that were beyond me.  Like my attorney said, my daughter, she

6   has addressed this in court.  I have been in the hospital

7   myself several times.  My daughter was in a horrible car

8   accident, and I have to take her to therapy four times a week

9   which, the contracts I have already set with the jobs that I am

10  working have been delayed because now I have to alter the times

11  I have to get her from New Jersey to take her to therapy.

12         Your Honor, I am not, not trying to be disobedient.  I

13  am working as hard as I can to -- I was on house arrest for

14  over a year -- working as hard as I can to catch up and provide

15  a living for myself and my daughter.  She is going to college

16  next year.  We haven't visited colleges or things of this sort.

17         I am trying as hard as I can and working as hard as I

18  can, and I am also providing to the government each time there

19  is any event, even at times where it doesn't even apply to a

20  violation of the bail, I do stay in contact with Pretrial

21  Services.

22         Unfortunately, I have never -- I have spoken with Ms.

23  Mejia one time during an initial release on Pretrial Services,

24  but I am in constant communication with Pretrial Services in

25  New Jersey, and my office -- Vincent is the one that said

K25JWOOH                              Bail Hearing

1    listen, Fatima, we understand what is going on because they're

2    more familiar with me, more familiar with visiting my home,

3    familiar with circumstances of my child.  They're familiar with

4    the business.

5             Vincent is the one that came to me and said listen,

6    because of these events, tell your attorney.  I didn't have no

7    clue what a standalone race book was.  I asked the attorney if

8    the court will permit you to be put on a standalone race book

9    because these things do occur.

10            THE COURT:  They won't occur any more.  You don't have

11   to worry about that.  Probation doesn't worry about that.

12   Curfew will not be extended a minute.  If you are not home by

13   12:00 o'clock, you are going to jail.  I want to make that very

14   clear.

15            THE DEFENDANT:  I understand.

16            THE COURT:  I don't care what the excuse is.  This is

17   not about your being somewhere and you let them know.  You are

18   supposed to be home, and I want you home, period.  If you are

19   not home by 12:00 o'clock, be ready to go to jail.

20            THE DEFENDANT:  Understood.

21            THE COURT:  End of story.

22            THE DEFENDANT:  Understood.

23            THE COURT:  Now, I want you to resolve this discovery

24   issue within the next few weeks.  I want you to provide, make

25   sure that the defense has access to whatever Mr. Zone needs in

K25JWOOH                     Bail Hearing

1    the next three weeks.  I am going to schedule a trial for April

2    13th.  I am going to set a Pretrial conference for March 25th.

3           MR. ZONE:  Judge, I will be on trial in the Eastern

4    District the last two weeks of March and potentially into the

5    first or the second week in April, a health care case.

6           THE COURT:  Approximately how many witnesses will the

7    government have and how long will it take?

8           MR. FINKEL:  I don't have a witness count, but I

9    estimate probably a one-week trial, hopefully less.

10          THE COURT:  When is your trial scheduled?

11          MR. ZONE:  I think I am going to go from -- I know it

12   goes from mid-March to I think mid-April.  Can we go into the

13   first week in May?

14          THE COURT:  You think you'll be on on trial April

15   27th?

16          MR. ZONE:  No.

17          THE COURT:  That is when I'm going to set a trial

18   date.  We will have a Pretrial conference on April 8th.  If

19   there is going to be a disposition in this case, I expect it to

20   happen on or before that date.  Otherwise, I am going to have a

21   jury panel ready and we are going to trial on April 27th.

22          MR. ZONE:  Your Honor, may I have a week past when our

23   issues, our discovery issues are resolved to file any motions,

24   if any?  I haven't seen anything, so I couldn't even tell you

25   right now if I have a motion to file.

K25JWOOH                        Bail Hearing

1          THE COURT:  You can have till March 13th to file any

2     motions you want to file.

3          MR. ZONE:  Okay, your Honor.  Thank you.

4          THE COURT:  So I will see everyone April 8th.  Curfew

5     is till 12:00 o'clock.  There is no exceptions to that, period.

6     At 12:00 o'clock, she should be in the house.  If she is not

7     there, then she knows where she is going to be.  She will be

8     coming out of that door right there.

9          I'll See everyone on April 8th unless I hear from you

10    beforehand.  If you work out a disposition, let me know as soon

11    as possible so I can take this off my calendar.  Otherwise, I

12    am going to start cleaning my calendar for trial and will see

13    you on April 8th.

14          MR. FINKEL:  Your Honor, two points.  With the Court's

15    indulgence, is March 13th the date of motions in limine and

16    pretrial conference or pretrial motions, suppression motions of

17    that sort?

18          THE COURT:  Any Pretrial motion.

19          MR. FINKEL:  Motions in limine as well?

20          THE COURT:  I don't need motions in limine before

21    April 8th.

22          MR. FINKEL:  April 8th?

23          THE COURT:  For motions in limine.  If it has to do

24    with the trial, April 8 whether we are going to trial.  If

25    there are any pretrial motions after close of discovery, we can

K25JWOOH                          Bail Hearing

1    address those on April 8th.

2              MR. FINKEL:  April 8th is Pretrial conference.  I am

3    sort of --

4              THE COURT:  Unless we need to have another pretrial

5    conference, that will be the final Pretrial conference because

6    if there are no motions and we are ready to go to trial, we are

7    going to trial on the 27th.  If I need to meet with you again,

8    I assume whatever motions in limine are made will be made by

9    then and it will be resolved before we start the trial.

10             MR. FINKEL:  The government moves to exclude time

11   between now and April 27 to allow the government and defense to

12   discuss a possible disposition and allow defense to prepare for

13   trial, make any required motions.

14             THE COURT:  Any objections?

15             MR. ZONE:  No.

16             THE COURT:  I will exclude the time in the interests

17   of justice between now and the trial date to resolve this case

18   or go to trial, and I expect defendant to abide by the curfew.

19   Otherwise, I think I made myself very clear of the

20   consequences.  I'll see the parties on April 8th unless I hear

21   from you.

22             (Court adjourned)

23

24

25