

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 29, 2021

**BY ECF**

Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

    Re:   *United States v. Fatima Woods,* **18 Cr. 423 (GBD)**

Dear Judge Daniels:

    The defendant in the above-captioned case is scheduled to be sentenced on November 30, 2021 at 10:00 a.m. Pursuant to a *Pimentel* letter dated May 10, 2021, the Guidelines Range in this case is 135 to 168 months' imprisonment. The Guidelines Range calculated in the Presentence Investigation Report ("PSR"), dated August 3, 2021, is the same. For the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range is appropriate in this case.

    **I.**   **Procedural Background**

    Fatima Woods was arrested on May 16, 2018. She was presented on Complaint 18 Mag. 4256 on May 17, 2018, which charged her in one count with participating in a conspiracy to distribute and possess with intent to distribute oxycodone, in violation of Title 21, United States Code, Section 846. On June 14, 2018, Woods was charged with the same offense in Indictment 18 Cr. 423. Woods pled guilty to Count One of the Indictment pursuant to a Pimentel letter on May 12, 2021.

    **II.**   **Offense Conduct**

    If this case had proceeded to trial, the Government's evidence would have included text messages, GPS tracker data, pharmacy records, state prescription records, surveillance video, and victim doctor testimony, among other forms of evidence.

    This evidence would establish that from at least in or about 2013 and continuing through her arrest in May 2018, the defendant conspired with a pharmacist (Victor LaPerla) and a pharmacy employee (Bianca Martinez), and others known and unknown, to obtain fraudulently dispensed oxycodone prescriptions from a pharmacy in Queens, New York (the "Queens Pharmacy"). LaPerla and Martinez have been charged in a separate New York State criminal case (the "State

Criminal Case") for their respective roles in the conspiracy. As detailed below, Woods is responsible for hundreds of thousands of fraudulently obtained oxycodone tablets with an estimated street value of well over $4 million.

   a. Woods's arrest

Woods was arrested on May 16, 2018 in the parking lot leaving the area of the Queens Pharmacy. On the day of her arrest, Woods drove her vehicle from her home in New Jersey, through Manhattan, to the Queens Pharmacy. The Government tracked Woods using a GPS tracker on her cellphone (ending in the numbers 4576). At approximately the same time that Woods's cellphone arrived in the vicinity of the Queens Pharmacy, surveillance video at the pharmacy showed Woods's vehicle drive past the front entrance, and a black male—later identified as her brother, Kareem Sulaiman—enter the pharmacy. DEA agents observed Sulaiman leave the Queens Pharmacy a short time later carrying a white plastic shopping bag. Law enforcement agents stopped Woods's vehicle after it had left the Queens Pharmacy. Woods and Sulaiman were both in the car. Law enforcement agents searched the car and recovered Woods's cellphone, along with the shopping bag that Sulaiman had taken from the Queens Pharmacy, which was found to contain six unlabeled, amber-colored bottles of pills containing a total of approximately 1,090 tablets of 30 mg oxycodone.

The Government's evidence establishes that Woods sent her brother into the pharmacy on May 16, 2018 to pick up oxycodone from LaPerla and/or Martinez, and that Woods had been engaged in a years-long conspiracy with LaPerla and Martinez to traffic in illegal oxycodone. With respect to the events of May 16, 2018, WhatsApp messages recovered from Martinez's phone show that in the hours prior to Woods's arrest, Woods messaged Martinez falsely claiming that she was stuck in Philadelphia due to weather. In fact, Woods was in the New York area. Woods asked Martinez if there was "Anyway you can take things with you," but Martinez replied that "Vic [i.e. Victor Laperla] won't allow." Woods then told Martinez that she "sent her brother" because neither she nor her "partner" were available. Woods provided Martinez with a description of her brother. Martinez instructed Woods that "He has to come in" and "just let [sic] know he is picking up for nicole." As discussed further below, "Nicole" is the name that Martinez and LaPerla used to refer to Woods. Martinez next messaged "Ok he picked up," to which Woods replied "wheew thank GOD" and "Thank you and V so much." Woods was arrested a short time later with oxycodone that her brother had picked up from the Queens Pharmacy in her vehicle. Her brother was not charged.

   b. Woods' role in the conspiracy

Woods's role in the conspiracy with LaPerla and Martinez was two-fold. First, Woods would obtain stolen blank paper prescriptions and furnish them, populated with fake patient information, to LaPerla and/or Martinez. Second, after LaPerla filled the fraudulent oxycodone prescriptions, Woods (or someone sent to the Queens Pharmacy on her behalf) would pick up the oxycodone, which Woods paid for in cash. Woods also tracked fake patient information and due dates for their fraudulent prescriptions, and at times consulted with Martinez about which fake patients' prescriptions were due. For example, the WhatsApp messages recovered from Woods's phones include the following messages with Martinez:

- In June 2017, Martinez told Woods she was "Going over ordering now" and asked Woods to "Look at 5/3" (i.e. a May 3rd order). Woods confirmed "ketoconazole 200 mg 30 tabs." Martinez responds "Done yes" and "He said 45." Subsequent messages refer to this "he" as "V," believed to be Victor LaPerla.

- In July 2017, Woods told Martinez "I think I should mention the 9 to V" and "He made a mistake (again) but I shouldn't." In these messages, Woods appears to be referring to the fact that Victor LaPerla made a mistake in filling her prescriptions and either shorted her or gave her an extra by mistake.

- In July 2017, Martinez messaged Woods to say "Hey just want to let you know there was 4 picked up," and Woods responds "Ok !! How many papers does he need?" Martinez later responds "4 and 6 for the future." These and similar messages discussed below evidence Martinez/LaPerla requesting Woods to furnish paper prescriptions.

- In September 2017, Woods commented to Martinez "I'm sure he needs paper." Martinez responded "He said yes" and "he is all set and ready and yes he needs for next ones." Woods replied "My cousin is coming by then I'll be over with paper."

- Also in September 2017, Woods told Martinez that envelopes she left for Martinez and LaPerla had "paper in one and 6800 in another" / "All hundreds . . I took it out of the bank."

- In October 2017, Woods told Martinez "I know he needs more paper" / "how many" and Martinez responded "8."

- In December 2017, Woods told Martinez "I'm sure he needs paper . . . but would you be able to write who's due"? Martinez responded "I'll try but your good for this week."

- In January 2018, Woods told Martinez "I dropped paper off with v but I know it wasn't enuff" / "I didn't want to duplicate any."

- Also in January 2018, Woods asked Martinez "And how many paper do you need." Martinez responded "6." Woods later wrote "Do you think v can leave things with you tomorrow . . ." / "by the time I have all the paper from last week and 2 weeks forward it will be time for you to close." Also in January 2018, Woods told Martinez "I'm coming with paper by 6."

- In February 2018, Woods told Martinez "I'm going to bring the paper today."

- In April 2018, Woods told Martinez "I spoke to V" and "I dropped papers to him yesterday." Woods noted "I couldn't get my hands on paper it was stressing me out."

- Also in April 2018, Woods told Martinez "I'm going to ask him to double this week since he can't back track and see that this week we are 1 behind." Martinez responded "Now what I don't get is the 20 rx. He isn't noting that." Woods later asked "Did he use all the papers I gave him?" Martinez responded "Tom and Thursday."

- Later in April 2018, Woods asked Martinez "Was the papers I gave good," and Martinez responded "Hey yes." Woods later asked "Can you let me know who's due . . . or print the full papers out as you did before."

- In May 2018, before her arrest, Woods asked Martinez to "Ask v what's the balance." Martinez responded "You are good for this week and next" / "with what was picked up today 217" / "60." Woods responded "Ok" / "With paper?" and Martinez replied "Yes."

The WhatsApp messages recovered from Woods's phone also include May 2018 messages with a contact named "Destiny Moore" in which Woods asked Moore "if you can get more paper" and Moore responded "I'll ask." Woods's WhatsApp Messages with Moore also included a photograph of a blank paper prescription.

With respect to the fake patients that Woods used on the fraudulent prescriptions she submitted to the Queens Pharmacy, the Notes file on Woods's cellphone shows that she tracked the names, as well as some dates of birth prescription information for these fake patients. These notes files were created between May 2015 and October 2016.

Woods's role in the conspiracy is further confirmed by a search that was conducted at the Queens Pharmacy. As part of the State Criminal Case, a search was conducted at the Queens Pharmacy in or about May 2018. During the course of that search, approximately 24 paper prescriptions were located in a workspace belonging to LaPerla. These paper prescriptions were written for 180 tablets of oxycodone 30 mg and were purportedly signed either by Elena Ocher, M.D. or by Mark Gladstein, M.D. The prescriptions were filled out in the names of 18 separate "patients." The names and dates of birth of these purported "patients" have been searched in law enforcement databases and do not appear to belong to any real person. Dr. Ocher and Dr. Gladstein have also been interviewed and denied having any patients with those names and dates of birth and denied signing the prescriptions at issue. Of the 18 fake patients whose names appear on the paper prescriptions found in LaPerla's workspace, 16 of their names (or close misspellings/variations on their names) appear in "Notes" entries on Woods's cellphone.

In sum, the foregoing establishes that Woods's role in the conspiracy included obtaining and furnishing stolen paper prescriptions to LaPerla/Martinez, which Woods would provide to them as requested; that Martinez acted as a go-between passing messages between Woods and LaPerla; that LaPerla used the fraudulent prescriptions to dispense oxycodone illegally; that

Woods or someone acting at her direction would pick up the fraudulently dispensed oxycodone tablets from LaPerla/Martinez at the Queens Pharmacy; and that Woods paid for these drugs in cash payments.

    c. <u>Time period of relevant conduct</u>

The Indictment charges Woods with engaging in an oxycodone trafficking conspiracy from November 2017 through May 2018. The relevant conduct spans from at least in or about July 2013 through Woods's arrest in May 2018.

The Government's evidence that Woods participated in the charged conspiracy as early as July 2013 and continuing through her arrest includes the following. As part of its investigation, the Government obtained the contents of LaPerla's cellphone, including his communications with Woods. Woods's known cellphone number (646-404-4576) is saved in LaPerla's cellphone under the contact name "Nicole." LaPerla's communications with Woods stopped on May 22, 2018—several days after Woods's arrest. The calendar section of LaPerla's cellphone first references "Nicole" (i.e. Woods) on or about July 24, 2013. Beginning on or about August 9, 2013, LaPerla's calendar entries include what appear to be drug ledgers reflecting the delivery of prescription drugs to "Nicole" in exchange for cash payments.

For example, LaPerla's calendar entry for August 9, 2013 reads as follows:

| 545 | Start Time:<br>8/9/2013<br>10:00:00 PM(UTC-4)<br>End Time:<br>8/9/2013<br>11:00:00 PM(UTC-4) | Subject: Nicole paid $1200.00 for 3 rs's for the week 8/5/13-8/9/13. She owes $800.00 more which includes 4 more rs's during the week of 8/12/13-8/16/13<br>Attendees:<br>Location:<br>Details: | Category: Work<br>Reminders:<br>Priority: Unknown<br>Status: Unknown<br>Class: Normal<br>Repeat Day: None<br>Repeat Rule: None<br>Repeat Interval: 0<br>Repeat Until: |

Similarly, the "Notes" section of LaPerla's section contains an entry titled "Nicole 2/1/14" that reads as follows:

| 171 | Created:<br>2/1/2014<br>7:00:54 PM(UTC-5)<br>Modified:<br>5/15/2014<br>8:03:52 PM(UTC-4) | Title: Nicole 2/1/14<br>Body: Nicole 2/1/14 5200-3440=1760. 2/1/14<br>1760-1250=510 2/6/14<br>510+5200=5710=5700<br>5710-4400=1310. 2/08/14owes<br>1310-680=630 2/14/14 owes<br>630-10=620 2/15/14 adj<br>620+5,200=5,820 2/15/14<br>5,820-5,420=400 2/15/14 owes<br>400+5200=5600 2/22/14 paid.<br>5200-5200=0 3/3/14 paid.<br>Nicole owes week ending 5/16=$1580. -1400 =180 due from Nicole |

The "Notes" section of LaPerla's phone also contains an entry titled "Nicole 6/22/14" containing what appears to be a drug ledger entries for transactions between LaPerla and Woods spanning from June 2014 through May 2018. The complete text of that entry appears at **Exhibit A**. Among other things, this ledger includes:

- Entries referring to how much "paper" (i.e. paper prescriptions) LaPerla needs from Woods
- References to how many "rx's" (i.e. prescriptions) LaPerla "gave" to Woods
- How many "tablets" (i.e. oxycodone tablets) that LaPerla "owe[s]" Woods
- How much money Woods paid to LaPerla
- The "Balance" of payments that Woods owed to LaPerla

    d. <u>Drug weight attributable to Woods</u>

To calculate the drug weight attributable to Woods, the Government did the following. Using the New York State Bureau of Narcotics Enforcement prescription database, the Government ran the names of all the fake patients that Woods tracked on her cellphone. That search identified 35 distinct patient names that appeared on Woods's cellphone (including the exact name and minor spelling variations) that had been used on prescriptions filled at the Queens Pharmacy during the time period of Woods's involvement, i.e. from July 2013 through May 2018. The prescriptions identified as a result of these searches identified that these 35 fake patients had a total of approximately 128,455 tablets of 30 mg oxycodone, or a total of 3,854 grams of oxycodone, filled at the Queens Pharmacy, on approximately 714 prescriptions purportedly issued by just three prescribing doctors. As noted above, two of those physicians were interviewed and have denied having any of these fake patients as patients and denied signing the prescriptions at issue. Prescriptions purportedly issued by the third doctor include prescriptions that were taken from the same serialized prescription pad as the other two victim doctors, indicating those prescriptions were also stolen. At an estimated average street value of $30 per tablet of 30 mg oxycodone, these pills have a total estimated street value of $4,495,275.

The high volume of pills attributable to the defendant's drug operation is confirmed by the drug ledger in LaPerla's cellphone, described above. According to that ledger, the defendant made a total of $1,071,710 in payments to LaPerla as of her arrest, and owed an outstanding balance of $17,960. In total, the defendant therefore obtained $1,089,670 in 30 mg oxycodone tablets from the Queens Pharmacy, at a bulk rate of approximately $8.48 per pill (based on the total above of 128,465 pills). Based on their training and experience in prior oxycodone investigations, one or more DEA agents would testify that a bulk rate of approximately $8.48 per 30 mg oxycodone tablet is a reasonable markup for the bulk sale of fraudulently diverted oxycodone (which would have been purchased at a much lower wholesale price by the Queens Pharmacy).

### III.   <u>Guidelines Calculation</u>

As set forth in the Government's *Pimentel* letter, based on the offense conduct described above, the Guidelines calculation is as follows. Based on converted drug weight of 25,821 kilograms (3,854 grams of oxycodone x 6,700 grams of converted drug weight), the base offense level is 34, because the offense involved at least 10,000 kilograms, but less than 30,000 kilograms, of converted drug weight. After acceptance of responsibility, the adjusted offense level is 31. Based on a Criminal History Category of III, as calculated based on the offenses set out in the Government's *Pimentel* letter, the Guidelines range is 135 to 168 months' imprisonment.

### IV.   <u>A Guidelines Sentence is Appropriate Given the Seriousness of the Offense Conduct and the Defendant's Criminal History</u>

    **A. Applicable Law**

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district

court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B. Discussion**

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct to the defendant and those similarly situated, and to protect the public from the defendant's years-long pattern of criminal activity. These considerations weigh in favor of a sentence within the Guidelines Range of 135 to 168 months' imprisonment.

A sentence within the Guidelines Range would appropriately reflect the nature and seriousness of the defendant's conduct, provide just punishment for the offense, and deter the defendant and others who are similarly situated. The defendant participated in a years-long scheme to acquire and sell millions of oxycodone 30 mg tablets. As the Court is well aware, oxycodone and other opioids are highly addictive and dangerous painkillers at the heart of an overdose crisis in this country. The defendant played a pivotal role in pedaling these dangerous drugs. As detailed above, Woods not only acquired blank, stolen prescription pads that could be used to illegally dispense oxycodone without a valid prescription—a hugely serious crime in and of itself, which undermines the integrity of our healthcare system and the safeguard put in place to protect against the unfettered dealing of dangerous opioids—but purchased in excess of $1 million, or approximately 128,455 pills, in fraudulently dispensed oxycodone 30 mg tablets from her co-conspirators at the Queens Pharmacy. Woods took several steps to avoid detection in this scheme, including by using the name "Nicole" as a pseudonym when picking up fraudulently issued

oxycodone prescriptions, and using third parties such as her brother to make the physical pick-ups from the Queens Pharmacy. The staggering drug quantities that Wood dealt in are established by a mountain of evidence in this case, including ledgers on Woods's own cellphone, a ledger maintained by her co-conspirator, and the prescription weights attributable to the fake patient names used by Woods. Indeed, the scope of Woods's conduct is confirmed by the facts of her arrest in 2018: in one day, in one drug pick-up from her co-conspirators, the defendant had acquired 1,090 tablets of 30 mg oxycodone. Multiply that weight over the course of five years, and the scope of the defendant's crime becomes apparent.

It is also plain from the defendant's criminal history that her prior terms of probation and imprisonment have been insufficient to deter her from future criminal conduct.[1] Specifically, the defendant was previously sentenced to: (1) one year of imprisonment on a 2012 conviction for possession of a forged instrument; (2) 70 days' imprisonment, after violating the terms of her community-based supervision on a six-year suspended sentence, on a 2010 charge for grand larceny; and (3) 70 days' imprisonment, after violating the terms of her community-based supervision on a 30-day suspended sentence, on a 2009 charge for giving a false identity to a law enforcement officer—as well as additional sentences that did not count toward her criminal history calculation. The facts underlying Woods's 2012 conviction are particularly relevant here. As described throughout, the defendant's current oxycodone trafficking scheme involved fraudulent prescriptions written on the prescription pads of three victim doctors, and prescriptions filled at the Queens Pharmacy from 2013 to 2018. In her prior case, the defendant was arrested in 2011 in possession of a forged oxycodone prescription purportedly signed by a fourth victim doctor. According to New York State pharmacy records, no prescription signed by that fourth victim doctor has ever been filled at the Queens Pharmacy. Accordingly, the defendant's fraudulent possession of that doctor's prescription in 2011 evidences her involvement in a separate, earlier oxycodone scheme not involving her co-conspirators at the Queens Pharmacy or the victim doctors whose names were fraudulently used at the Queens Pharmacy. Despite being sentenced in 2012 to a one-year term of imprisonment for her involvement in that prior scheme, the defendant began her involvement in the current scheme in 2013 and continued for five years until her arrest in this case. Her most recent, very serious conduct must be met with a concomitantly significant punishment that deters the defendant from future similar conduct, particularly in light of this criminal history.

V. **Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 135 to 168 months' imprisonment, as such a

---

[1] Furthermore, the defendant's latest attempts to withdraw her guilty plea suggests that she has failed to accept responsibility for her conduct, a concerning sign that she may re-offend particularly if not adequately deterred by a serious term of imprisonment. Depending on the defendant's conduct at sentencing, the Government reserves the right to argue that the Guidelines calculation should indeed be even higher because the defendant is not entitled to credit for acceptance of responsibility.

sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney

By:   */s/*_____
     Ryan B. Finkel
     Jessica Greenwood
     Assistant United States Attorney
     (212) 637-6612 / 1090

Cc: Mitchell Elman, Esq. (by ECF)

Rev. 07.20.2016

# EXHIBIT A:

## VICTOR LAPERLA CELLPHONE

### Note # 121 – Created 11/1/2015, Last Modified 5/18/2018

| 121 | Created:<br>11/1/2015<br>10:19:36 AM(UTC-5)<br>Modified:<br>5/18/2018<br>9:45:37 AM(UTC-4) |
|---|---|

Title: Nicole 6/22/14
Summary: 6,200-4.780-1,420.00
Source: Notes
Body: Nicole 6/22/14
6,200-4.780-1,420.00
1000,00=420.00 6/25/14
Total amount $8,820 07/5/14
420-420=0 7/5/14 old balance
Fronted $8,400 gave 4 x 180
7/5/14 owe 4 x 180 7/5/14 paid
6,200-3800=2,400 owe 7/10/14
7/17/14 she gave $5500. Owed  $6,500 6x180=6,200.  She gave $5,500.  Old balance $400. Total owed $6,200 + $40=$6,600-$5,500 owes
$1,100.as of 7/17/14. $1100 paid 7/25/14. 7x180=$7240 paid 7/25/14. Owe $0..
$7240-$6200=$1040 balance.
8/14/15.
8/23/14 $6200.+1040=$7240.
Paid $6800-7240=$440.
Balance $440 8/23/14
Paid 7,280-6640=$640 8/29/14
Balance +$640.00
Paid $6,200.00-$6,200.00=0
Balance 0. 9/7/14
9/12/14 $6,200-2,000.00=4,200.  Balance.
9/19/14 $4,200.00 balance 0.00
9/1914 $7,200-7,200 balance 0.00
9/29/14 gave 5 gave $4,000. Balance &1,200.00
10/1/14 gave 7
Balance $8.400.00
10/4/14 $7,400.00 paid
Balance $1,000.00
Gave 6 @$6,200
Balance 7,200.00 she gave
$6,200
Balance $1,000.00 plus 1
Balance $2,040.00
Paid 10/16/14
Balance 0
She advanced $6,200. 10/16/14 for 6.
Gave out 6.
Balance 0.
10/24/14 $6,200. Paid $6,200.  Balance 0.
11/6/14 $12,400.00
Paid $4,000. Balance $8,400.  Paid $8,400. Balance 0 11/7/14.
11/7/14 gave 1 more owes 1030. Balance $1030, 11/7/14. Paid $1040. 11/14/14. Balance 0.
11/14/14 gave 6 paid $6,200. Balance 0.
11/21/14 gave 6 paid $5,500.00 balance $700.00
Gave 6@$6,200 gave $3,00.00 balance $3,900.00
Gave 6@$6.200 balance gave $10,100.00 balance 0.
Received 6,200 in advance 12/15/14. Gave 3 on 12/17/14 gave 3 on 12/19/14 balance 0.
Advanced $6,200 12/19/14
Gave 2 therefore 4 are left 12/20/14. 12/24/14 gave 4 balance is 0.
Gave 6 need paper for 4
Received $6,000.00 balance $200.00 12/29/14
Gave 4 rx's even. Balance still owes $200.00 1/2/15. Also gave 2 rx's balance 4 rx's owes $6,200 plus balance of $200.00 1/2/15.
1/7/15 received $4000.00 owe balance of $2400.00.
Paid $2,400.00 1/9/15 balance 0.  1/16/15 owe 2 rx's paid $6,200 balance 0.
Paid $6,200 gave 6 + 2 balance 0.
2/6/15 paid $6,200 balance 0.
2/13/15 paid $3,400 balance owe $2,800.  2/19/15 paid $7,200.00 balance $1,800.00
Paid 2/28/15 $6,200,00 owe 3 by 180's balance owe $1,800.00 2/28/15
Paid $2,300.00 3/6/15 balance credit $500.00 owe $6,200 week of 3/6/15 minus $500.00 balance $5,700.00. 3/1615 paid $11,200.00-$5,700.00 balance $5,500.00 owe $6,200.00 for week of 3/16/16 balance owe me $700.00 for week 3/16/15. I owe her 6 total. 3/18 gave her 1. Now week of 3/16/15 owe 11. Gave me $3,000.00-700=$2.300credit +$6.200 balance do $3,900.00.

3/19/15 gave 4 balance is 7. Gave 6 balance 1  3/24/15. 3/24/15 add $6,200.00 plus 6 = 7 balance. Balance amount $10,100.00 gave me $1,000.00=$9,100 3/24/15.
3/26/15 gave 2 balance 5.
3/31/15 gave me $8,600 balance owe $500 and owe her 5 for week for week 3/23/15. Week 3/30/15 owe me $6,700 I owe her 11. 4/6/15 gave her 6 balance 5. 4/6/15 add 6 and $6,200 balance 11 and $12,900. 4/6/15 gave me $2,800 balance $10,100 owe her 11.  3/7/15 gave her 3 balance is 8 and $10,100. 4/8/15 gave 3 balance 5 and $10,100. Gave her 2 on 4/14/15 balance 3 and $10,100. Gave $8,500.00 balance $1,600.00. 3/13/15 owe 9 she owes me $7,800 Balance. 3/17/15 gave her 3 balance 6. Gave me $6,200 balance $1,600 and 6.  4/20/16 owe her 12 balance $7.800. 4/21/15 gave her 2 balance 10. She gave me on 4/21/15 $1,600 balance $6,200.  4/24/15 gave her  7 balance  3 and $6,200. 4/24/15 she gave me $6,200. Balance $0.  Gave her 3 4/27/15 balance 0.4/27/15 $6,200. 4/27/15 gave me $3,000.  Balance $3,200.  Owe her 6. 4/28/15 gave her 3 balance 3. Gave me $3,200 balance 0. Balance 3 4/28/15. 5/4/15 add 6 balance 9 and $6,200,balance. Gave 7 on 5/6/15. Balance 2 and $6,200. 5/9/15 gave 2 balance 0 and $6,200.
She gave $3,900 balance $2,300 5/9/15. 5/11/15 owe 6 and her balance is 8,500. 5/12/15 gave 2 balance 4 and $8,500.  5/15/15 gave me $8,510.  Balance credit $10.00 owe her 4 balance 5/15/15. 5/19/15 gave 3 owe her balance of 1. 5/19/15 add 6 balance of 7 with balance of $6,200. Gave her 3 on 5/22/15 balance 4. She gave me on 5/22/15 $2,100 balance $4,100 and balance of 4. 5/23/15 gave her 4 balance 0 and $4,100.  5/27/15 gave her 4 balance of 2 and $10,300 balance. 5/29/15 gave her 2 balance 0 and $10,300.  5/29/15 paid $3,800 balance $6,500. 6/1/15 owe 6 and balance $12,700. 6/3/15 gave her 2 balance 4 and $12,700.  6/3/15 gave me $12,400 balance $300. Gave her 4 on 5/6/15 balance 0 with balance of $300.  5/8/15 owe her 6 and balance of $6,500.  Gave me $1,500 balance $5,000 on 6/9/15. 6/11/15 gave her 6 balance 0 and $5,000. 5/15/15 $4,500 balance $500.  5/15/16 owe  7 only charge for 6. Balance $6,700 as of 5/15/15. 6/19/15 gave 5 balance 2.  6/20/15 gave 2 balance 0 and $6,700.  6/22/15 gave me $3,000. Balance $3,700 as of 6/22/15. 6/22/15 owe her 6 balance $9,900.  6/23/15 gave me $3,700 balance $6,200 and 6. Gave 6 on 7/3/15 owe me $6,200.  Owe her 6 for 6/29/15 balance $12,400. 7/3/15 gave me $6,200. Balance 6 and $6,200 as of 7/3/15. As of 7/6/15 owe her 12 balance of $12,400. 7/11/15 gave her 9 balance 3 and $12,400.  Gave 1 on 7/16/15 balance 2 and $12,400. 7/16/15 gave 2 balance 0 and $12,400. 7/13/15 owe 6 and $18,600. 7/16/15 gave 1 and owe 5 and $18,600.  7/16/15 and Gave me $6,200 balance 5 and $12,400.  7/18/15 gave her 3 owe her 2 and $12,400.   7/18/15 gave me $6,200 balance 2 and $6,200.  7/20/15 owe her 6 balance of 8 and $12,400.  7/20/15 gave her 3 balance 5 and $12,400.  7/22/15 gave $6,200 balance 5 and $6,200.  Gave her 4 balance 1 and $6,200. 7/25/15 add 5 balance 6 and $12,400.  7/31/15 gave her 1 balance 5 and $12,400. 8/3/15 she gave me $6,200 balance 5 and $6,200 add 6 balance 11 and $12,400.  8/4/15 gave her 2 balance 9 and $12,400.  8/5/15 gave her 1 balance 8 and $12,400.  8/8/15 gave her 5 balance 3 and $12,400.
8/8/15 gave me $6,300 balance 3 and $6,100.  8/10/15 gave her 2 balance 1 and $6,100. 8/10/15 balance 7 and $12,300.  8/12/15 gave her 2 balance 5 and $12,300. 8/13/15 gave her 2 balance  3 and $12,300. 8/14/15 gave me $2,000 balance $10,300 and 3. 8/17/15 add 6 balance 9 and $16,500. 8/19/15 gave her 4 balance 5 and $16,500. 8/19/15 gave me $4,200 balance $12,300 and 5. 8/21/15 gave her 2 balance 3 and $12,300.  8/22/15 gave her 2 balance 1 also gave me $2,100 balance $10,200.  8/24/15 add 6 balance 7 and $16,400.  8/24/15 gave her 3 balance 4 and $16,400.  8/27/15 gave me $4,200 balance $12,200 and 4. 8/29/15 gave her 1 balance 3 and $12,200.  8/31/15 add 6 balance 9 and $18,400.  9/1/15 gave me $3,000 balance 9 and $15,400.  9/2/15 gave her 4 balance 5 and $15,400.  9/7/15 add 6 balance 11 and $21,600. 9/11/15 gave her 4 balance 7 and $21,600. 9/11/15 gave her 2 balance 5 and $21,600.  9/11/15 gave her 3 balance 2 and $21,600.  9/11/15 gave me $12,350 balance 2 and $9,250.  09/14/15 add 6 balance 8 and $15,450. 9/16/16 gave her 2 balance 6 and $15,450. 9/18/15 gave her 1 balance 5 and $15,450.  9/19/15 gave me $3,000 balance 5 and $12,450. 9/21/15 gave her 4 balance 1 and $12,450.  9/21/15 add 6 balance 7 and $18,650.  9/21/15 gave me $4,400 balance $14,250 and 7. 9/22/15 gave her 3 balance 4 and $14,250. 9/25/15 gave her 3 balance 1 and $14,250. 9/29/15 gave me  $8,000. Balance $6,250. And 1. 9/28.15 add 6 balance 7 and $12,450. 10/5/15 add 6 balance 13 and $18,650. 10/6/15 gave her 3 balance 10 and $18,650. 10/6/15 gave me $3,000 balance 10 and $15,650. 10/9/15 gave her 2 balance 8 and $15.650.

10/9/15 gave her 3 balance 5 and balance of $15,650. 10/13/15 gave her 3 balance 2 and $15,650. 10/13/15 gave me $10,000 balance 2 and $5,650. 10/14/15 gave her 2 balance 0 and $5,650. 10/17/15 gave me $2,000. Balance $3,650. and 0. 10/12/15 add 6 and $9,850. 10/19/15 add 6 and balance of $16,050 and 12. 10/20/15 gave her 2 balance of 10 and $16,050. 10/21/15 gave me $2,000. 10/21/15 gave her 4 balance 6 and $14,050. 10/29/15 owe 3 balance$4,250. 11/2/15 add 6 and $6,200 balance 9 and $10,450. 11/3/15 gave her 5 balance 4. Gave me $9,000 balance $1,450. 11/9/15 add 6 balance 10 and $7,650. 11/10/15 gave her 3 balance 7 and $7,650. 11/13/15 gave her 2 balance of 5 and $7,650.11/13/15 gave me $2,980 balance $4,670. 11/14/15 gave her 3 balance 2 and $4,670. 11/14/15 gave me $4,760 balance + 90 dollars and 2. 11/16/15 add 6 balance 8 and $6,110. 11/17/15 gave her 3 balance 5 and $6,110. 11/23/15 gave her 5 balance 0. 11/23/15 add 6 and $6,200 balance $12,310. 11/28/15 gave her 3 balance 3 and $12,310. 11/18/15 gave me $7,0/00, balance 3 and $5,310. 12/4/15 gave her 2 balance 1 and $5,310.12/4/15 gave me $2,000 balance of $3,310. 11/30/15 add 6 balance 7 and $9,510. 12/5/15 gave her 2 balance 5 and $9,510. 12/5/15 gave her 3 balance 2 and $9,510. 12/5/15 gave me $5,500 balance $4,010 and 2. 12/7/15 add 6 balance 8 and $10,210. 12/22/15 gave her 6 balance 2 and $10,210. 12/14/15 add 6 balance 8 and $16,410. 12/26/15 gave her 5 balance 3 and $16,410. 12/21/15 add 6 balance 9 and $22,610. Gave me $16,940 balance 9 and $5,670. 12/30/15 gave her 6 and balance of 3 and balance of $5,670. 12/23/15 gave me $4000.00. Balance $1,670 and I owe her 3. On 1/4/16 gave her 3 balance 0 and $1,670. 12/28/15 add 6 and $7,870. 1/4/16 gave her 6 balance 0 and $7,870. 1/4/16 gave me $2,000 balance 0 and $5,870. 1/4/16 add 6 balance 6 and $12,070. Gave her 2 balance of 4 and 12,070. 2/1/16 gave her 3 balance 1 and $12,070.2/1/16 gave me $600. Balance 1 and $11,470. 2/6/16. 01/11/16 add 6 balance 7 and $17,670. 2/6/16 gave 4 balance 3 and $17,670. 2/8/16 gave me $7,000. Balance 3 and $10,670. 1/17/16 add 6 balance 9 and $16,870. 2/13/12 gave her 5 balance 4 and $16,870. 02/16/16 gave me $7,260 balance $9,610 and 4. 2/20/16 gave her 2 balance 2 and $9,610. 1/25/16 add 6 balance 8 and $15,810. 2/20/16 gave her 3 and balance of 5 and $15,810. 2/20/16 gave me $10,000. Balance 5 and $5,810. 2/1/16 add 6 balance 11 and $12,010. 2/27/15 gave her 6 balance $12,010 and 5. 2/27/16 gave me $5,000. Balance of 5 and $7,010. 3/5/16 gave her 5 balance zero and $7,010. 2/08/16 add 6 balance 6 and $7,010. 3/12/16 gave her 6 balance zero and $13,210. 2/15/16 add 6 balance of 6 and $19,420. 3/12/16 gave her 3 balance of 3 and $19,410. 3/12/16 gave me $13,210. Balance of 3 and $6,200. 2/22/16 add 6 balance 9 and $12,400. 3/18/16 gave her 5 balance of 3 and $12,400.3/19/16 gave her 3 balance of 0 and $12,400. 3/19/16 gave me $6,000 balance $6,400 and 0. 2/29/16 add 6 balance 6 and $12,600. 3/25 gave her 3 balance 3 and $12,600.
Gave her 3 balance 0 and $12,600.
3/25/16 gave me $4,000. Balance$8,600 and 0. 3/7/16 add 6 balance $14,800. 4/2/10 gave her 5 balance 1 and $14,800. 4/2/16 gave me $5,200. Balance $9,600 and 1. 3/14/16 add 6 balance 7 and $15,800. 4/9/16 gave her 5 balance 2 and $15,800. 4/9/16 Gave her 2 balance 0 and $15,800. 4/9/16 gave me $6,200 balance $9,600. 7/15/16 gave me $4,000 Balance owes me $5,600 and gave her 5 plus $5,167 total $10,767. 7/18/16 gave one $1,033 adds to total $11,800. 7/18/16 gave 2 owes $2067 equal 13,867. 7/20/16 gave me 3,980. Balance 4 and $9,867. 7/28/16 gave me $3,000 balance $6,867 and 4. Gave her 3 and a 100 tabs, owe 80 tablets and $6,867. She gave me $5,500 on 8/3/16. Balance $1,867. 8/6/16 gave her 6 balance $8,067 owe her 40 tablets. 8/13/16 gave her 40 tabs and 6 balance $14,267. 8/13/16 she gave me $6,000 balance 0 and $7,267. Gave her 2 add $2066 total $9,333. 9/3/16 gave her 4 balance $13,466. 9/7/16 have her 6 balance $19,666. 9/10/16 she gave me $5,900 balance $13,766.
9/17/16 gave her 6 balance $19,966. 9/17/16 gave me $9,000 balance $9,966. 9/27/16 gave her 6 balance $17,166. 9/27/16 she gave me $7,000 balance $10,166.10/4/16 gave her 6 balance $16,366.10/4/16 gave me $6,000. Balance $10,366. 10/11/16 gave 6 balance $16,566. 10/11/16 gave me $3,000 balance $13,566. 10/15/16 gave me $7,000 balance $6,566. 10/17/16 gave her 5 balance $11,732. 10/22/16 gave me $8,000 balance $3,732. 10/24/16 gave her 6 balance $9,932. 11/5/16 gave her 6 balance $16,132. 11/05/16 gave me $5,000 balance $11,132. 11/11/16 gave me $1,000 balance $10,132. 11/12/16 gave her 6 balance $16,332. 11/12/16 gave me $5,900 balance $10,432. 11/18/16 gave her 6 balance $16,632. 11/19/16 gave me $9,000 balance $7,632. 11/28/16 gave her 6 balance $13,832. 11/28/16 she gave me $3,000 balance $10,832. 12/03/16 gave her 6 balance